USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:___3/30/2026___

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PATRICK TARRANT and TPH-PROJECT
SERVICES, LLC,

                              Plaintiffs,

              -against-

CITY OF NEW YORK, et al.,

                              Defendants.

24-CV-02011 (MMG)

**OPINION & ORDER**

MARGARET M. GARNETT, United States District Judge:

This is an action under Section 1983.  Plaintiffs are Patrick Tarrant and TPH-Project Services, LLC.  Defendants are the City of New York, the New York City Department of Buildings ("DOB"), and DOB employees Ashraf Omran, David F. McEwan, and Mark Schiele. The DOB requires certain construction permit applications to include a letter from a "master rigger."  The letter specifies that an undersigned master rigger will personally supervise a worksite.  Plaintiff Patrick Tarrant is a master rigger who committed to supervising a worksite. When a DOB inspector arrived at the worksite and discovered Tarrant's absence, he threatened to shut down the worksite.  Plaintiffs contend this violated their rights under the Due Process Clause.  Before the Court now is Defendants' motion to dismiss.  For the following reasons, the motion is GRANTED.

1

## BACKGROUND

### I.   RELEVANT FACTS[1]

New York City Building Code section 3316.9.1 states: "The hoisting or lowering of any suspended article on the outside of any building in the city shall be performed by or under the direct and continuing supervision of a licensed rigger." DOB policy requires that certain applications for construction permits include a letter from the "master rigger" who will supervise the construction project (the "Master Rigger Letter"). FAC ¶¶ 5, 16, 28. If a permit application fails to include the Master Rigger Letter, the DOB will reject it. *Id.* ¶ 5. There have been an unspecified number of legal challenges to the DOB's Master Rigger Letter requirement. In one State court action, the DOB apparently conceded that Section 3316.9.1 of the New York City Building Code does not necessitate the Master Rigger Letter requirement. *Id.* ¶ 36.

Plaintiff Tarrant is a master rigger who previously participated in or pursued a legal challenge to the Master Rigger Letter requirement. *Id.* ¶ 44. He is the managing member of Plaintiff TPH-Project Services, LLC. *Id.* ¶ 1. Plaintiffs contracted with non-party Midwest Steel to supervise the hoisting operations on a construction project (the "Project") from May 12, 2023, to May 15, 2023. *Id.* ¶¶ 12, 16. Before work on the Project began, Tarrant submitted a Master Rigger Letter to the DOB, indicating that he would serve as the Project's master rigger. *Id.* ¶ 29. Nevertheless, after the DOB accepted the application, Tarrant concluded he would not be able to personally supervise the Project for its duration. "Due to [Tarrant's] inability to be personally present on site during the entire [work] period," he subcontracted with other licensed master

---

[1] The following facts are taken from the First Amended Complaint or "FAC," Dkt. No. 33, and assumed true solely for purposes of resolving Defendants' motion to dismiss. The Court shall refer to the parties' memoranda of law in support and opposition to the motion to dismiss as follows: Dkt. No. 37 ("Mot."); Dkt. No. 39 ("Opp."); and Dkt. No. 40 ("Reply").

riggers to supervise the Project in his absence. *Id.* ¶ 30. These subcontracted master riggers prepared Master Rigger Letters but seemingly did not submit them to the DOB. *Id.* ¶ 31.

On May 12, 2023, Defendant Schiele arrived at the Project's work site for a DOB inspection. *Id.* ¶¶ 32, 42. He learned that Tarrant was not present and threatened to shut down the Project due to Tarrant's absence in contravention of the Master Rigger Letter on file. *Id.* ¶ 32. This prompted Midwest Steel "not to proceed with the [Project] rather than receive the threatened Stop Work Order." *Id.* ¶ 33. The contract between Midwest Steel and Plaintiffs subsequently "was terminated." *Id.* ¶ 37. Midwest Steel has not contracted with Plaintiffs for any "Master Rigger jobs" since. *Id.*

## II.    PROCEDURAL HISTORY

Plaintiffs then commenced this lawsuit. In response to Defendants' pre-motion letter to dismiss, Dkt. No. 25, Plaintiffs filed the First Amended Complaint, Dkt. No. 33. Counts One through Four of the First Amended Complaint are procedural due process claims. *See* FAC ¶¶ 46–63.[2] Plaintiffs allege they had a property interest in the contracts with Midwest Steel and in the subcontracts with the other master riggers. *Id.* ¶ 47. Plaintiffs also allege they had a liberty interest in "freedom of contract" without arbitrary or unreasonable restraints. *See, e.g., id.* ¶ 51. Defendants unlawfully deprived Plaintiffs of those interests without due process, Plaintiffs allege, because the Master Rigger Letter requirement is unlawful and Defendants provided no notice or opportunity to respond before threatening to shut down the Project. *Id.* Count Five

---

[2] Counts One and Two of the First Amended Complaint explicitly reference the Due Process Clause. *See* FAC ¶¶ 48, 52. Counts Three and Four of the First Amended Complaint alleged violations of 42 U.S.C. § 1983 without tying those violations to another law or constitutional right. The Court construes both counts, however, to be alleging procedural due process claims. Count Three alleges that Defendants deprived Plaintiffs of the contract with Midwest Steel and substantial revenue "without due process." *Id.* ¶ 55. And Count Four alleges that Defendants deprived Plaintiffs of right to use and enjoy freedom of contract free from "unreasonable or arbitrary restraints" without due process. *Id.* ¶ 60.

alleges a violation of the New York Constitution.  *Id.* ¶¶ 64–66.  Counts Six and Seven allege municipal liability under *Monell* for constitutional violations and negligent training.  *Id.* ¶¶ 67–90.  And Count Eight is a substantive due process claim relying on the same alleged property and liberty interests as the procedural due process claims at Counts One through Four.  *Id.* ¶¶ 91–104.

Defendants moved to dismiss the First Amended Complaint.  Dkt. No. 33.  Among other arguments, Defendants contend Plaintiffs lack standing, have not alleged a constitutionally protected property or liberty interest, and cannot show a deprivation of a constitutional right.

**DISCUSSION**

**I.    LEGAL STANDARD ON A MOTION TO DISMISS**

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).[3]  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A complaint is properly dismissed where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief."  *Twombly*, 550 U.S. at 558.  The Court must assume all well-pleaded facts to be true, "drawing all reasonable inferences in favor of the plaintiff."  *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012); *see also A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76, 79–80 (2d Cir. 1993) ("[A]ll allegations are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor, notwithstanding a controverting presentation by

---

[3] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes and omissions, and adopt alterations.

the moving party."). However, the Court need not accept conclusory assertions. *Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 321 (2d Cir. 2021).

## II.    PLAINTIFFS HAVE STANDING

Defendants argue Plaintiffs lack standing to bring this suit because no final government action was taken and their injuries, if any, stem from Midwest Steel terminating the contract with Plaintiffs rather than any action by Defendants. *See* Mot. at 7 ("It was the decisions of non-party contractor Midwest Steel that resulted in the alleged harms."). Although Midwest Steel may have terminated the contract due to Defendant Schiele's warning, Defendants contend, Midwest Steel's "independent decision" means there is no injury fairly traceable to Defendants. *Id.*

The Court need not spend long on this argument. Standing requires an injury "fairly traceable" to a defendant's conduct. *Baur v. Veneman*, 352 F.3d 625, 632 (2d Cir. 2003). Plaintiffs allege Defendants threatened to shut down the worksite based on a regulatory requirement that Plaintiffs claim is unlawful. FAC ¶ 32. Due at least in part to that action (in Plaintiffs' telling), Midwest Steel terminated the contract, injuring Plaintiffs. *Id.* ¶ 33. Therefore, the injury is fairly traceable to Defendants' conduct and Plaintiffs have standing to sue.

## III.    THE COMPLAINT DOES NOT SUPPORT ANY PROCEDURAL DUE PROCESS CLAIM

Turning to the merits, Counts One through Four of the First Amended Complaint assert procedural due process claims. Defendants argue these claims fail because Plaintiffs have shown neither a constitutionally protected property or liberty interest nor a deprivation of such interests without due process. *See* Mot. at 7–14. The Court agrees.

A plaintiff must show three things to state a procedural due process claim under the Due Process Clause of either the Fifth or the Fourteenth Amendment. First, a plaintiff must show a

Constitutionally protected property interest or liberty interest. *J.S. v. T'Kach*, 714 F.3d 99, 105 (2d Cir. 2013). Second, a plaintiff must show a deprivation of that interest. *Id.* And third, a plaintiff must show "the deprivation was effected without due process." *Id.* (quoting *Local 342, Long Island Pub. Serv. Emps. v. Town Bd. of Huntington*, 31 F.3d 1191, 1194 (2d Cir. 1994)). Plaintiffs have done none of the above.

## A. Plaintiffs Fail to Allege a Constitutionally Protected Interest

The first element of a procedural due process claim is a Constitutionally protected property interest or liberty interest at stake in the litigation. Plaintiffs allege they had a property interest in their contract with Midwest Steel and their contract with the subcontractor master riggers. FAC ¶ 47. Plaintiffs also allege they had a liberty interest "to use and enjoy their freedom of contract with Midwest Steel and alternate Master Riggers, including freedom from unreasonable or arbitrary restraints." *Id.* ¶ 51.

### 1.    Property Interest

To establish a constitutionally protected property right, a plaintiff must have a "legitimate claim of entitlement to the alleged property interest." *Looney v. Black*, 702 F.3d 701, 706 (2d Cir. 2012). "Because the U.S. Constitution generally does not create property interests," a court "looks to 'existing rules or understandings that stem from an independent source such as state law to determine whether a claimed property right rises to the level of a right entitled to protection.'" *Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 784 (2d Cir. 2007) (quoting *DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.2d 124, 130 (2d Cir. 1998)).

Plaintiffs point to their contracts for the requisite property interests to support their due process claims. FAC ¶ 47. Defendants largely respond by citing cases in which a government entity is the contracting partner, and courts have held that ordinary commercial contracts with a government entity do not give rise to constitutional property rights in that contract. But Plaintiffs

6

are not asserting a contract dispute with the City, nor trying to turn an ordinary breach of contract dispute into a constitutional deprivation merely because the counterparty is a government actor. That is the circumstance Defendants' cases address. Rather, Plaintiffs are arguing that they had a property interest in the continued performance, by both sides, of their private contracts with Midwest Steel and the subcontractor master riggers, and that the actions of Defendant Schiele and the DOB more generally interfered with that property interest by promulgating and then enforcing the Master Rigger Letter requirements at the Project. In other words, Plaintiffs are asserting a constitutionally protected property interest in private contracts, even if performance under those contracts would violate laws or regulations that were in effect at the time the contracts were made.[4]

It is hardly surprising that Defendants had difficulty identifying cases to directly rebut this claim, as it has no foundation in the law or in constitutional jurisprudence. Plaintiffs can have no legitimate claim of entitlement to forswear enforcement of an existing regulation so that they can perform on private contracts in violation of that regulation. *See Universal Sanitation Corp. v. Trade Waste Com'n of City of New York*, 940 F. Supp. 656, 661 (S.D.N.Y. 1996) (private carting company did not have a protected property interest in their contracts with customers, so as to block a City requirement that they notify those customers of their right to terminate the contracts; nor can reputational damage from regulatory enforcement create a protected liberty interest). Plaintiffs' cases are not to the contrary—to the extent they are relevant at all, they involve government actions or regulations that abrogate or annul pre-existing

---

[4] The Court recognizes that Plaintiffs claim the regulations at issue exceed Defendants' authority under New York City law. But that does not change the question of whether there is a constitutionally protected property interest in continuing to perform under a private contract despite government regulations that bar that performance.

private contracts, made without the expectation of the challenged regulation. *See, e.g., Morgan Guar. Tr. Co. of New York v. Republic of Palau*, 680 F. Supp. 99, 103 (S.D.N.Y. 1988) (cited at Opp. 8); *DoorDash, Inc. v. City of New York*, 692 F. Supp. 3d 268, 297 (S.D.N.Y. 2023) (analyzing government regulation that altered rights under existing contracts, under a Takings Clause analysis) (cited at Opp. 8). Plaintiffs' situation is quite different. There can be no question that Plaintiffs were aware of the DOB's Master Rigger Letter requirement, and of DOB's enforcement position that the personal supervision of the named master rigger was mandatory. FAC ¶¶ 28, 36, 44. Parties are presumed to contract in the context of existing legal restrictions, especially in a highly-regulated and enforcement-based industry like construction, and private agreements cannot create an enforceable right to be free from applicable government regulations. *See Principle Homecare, LLC v. McDonald*, 158 F.4th 326, 332 (2d Cir. 2025) ("One whose rights, such as they are, are subject to state restriction, cannot remove them from the power of the State by making a contract about them.") (quoting *Hudson Water Co. v. McCarter*, 209 U.S. 349, 357 (1908) (Holmes, J.)).

### 2.    Liberty Interest

Next, Plaintiffs argue they had a general liberty interest to pursue contracts without unreasonable or arbitrary restraint. FAC ¶ 51. Their brief proclaims: "The Second Circuit recognized the liberty interest to use and enjoy the right of freedom to contract as subject to protection by [sic] due process clauses." Opp. at 10. But Plaintiffs provide no on-point authority supporting that proclamation. For example, Plaintiffs cite *Lightbox Ventures, LLC v. 3RD Home Ltd.*, but that case only commented there "is a well-recognized *public* interest in *enforcing* contracts." No. 16-CV-02379 (DLC), 2016 WL 6562107, at *12 (S.D.N.Y. Oct. 28, 2016) (emphases added). Plaintiffs also misquote the holding of 1988 case called *Morgan Guaranty Trust Co. of New York v. Republic of Palau*, 680 F. Supp. 99, 106 (S.D.N.Y. 1988). *See* Opp. at

8

10 (presenting *Morgan Guaranty Trust Co.*'s quoting a 1929 Supreme Court decision as the case's holding).

Defendants are correct that Plaintiffs' claim to a general liberty interest to be free from government regulation in their private contractual relationships is rooted in law that has been rejected for at least the last 90 years. *See W. Coast Hotel Co. v. Parrish*, 300 U.S. 379 (1937); *Toussie v. Cnty. of Suffolk*, 806 F. Supp. 2d 558, 580 (E.D.N.Y. 2011) ("It is clearly established that 'liberty' under the Due Process Clause does not protect 'freedom of contract.'"). Nor do Plaintiffs' claims fall within any of the limited and unique circumstances where a liberty interest in economic activity has been recognized. For example, the Second Circuit has recognized a liberty interest in pursuing a profession of one's choice, *Jaeger v. Bd. of Educ. of Hyde Park Cent. Sch. Dist.*, No. 96-CV-9336, 1997 WL 625006, at *1 (2d Cir. Oct. 9, 1997), but this applies only where a plaintiff has been deprived of any ability to work at all in their field, *Weidner v. City of New York*, No. 16-CV-06935 (RMB), 2017 WL 2984021, at *4 (S.D.N.Y. June 20, 2017). Similarly, the Second Circuit has also recognized that there can, under some circumstances, be a liberty interest in one's good name and reputation, *see Space Age Alarms, Inc. v. Bd. of Educ. of White Plains City Sch. Dist.*, No. 07-CV-07606 (CS), 2009 WL 10740051, at *4 (S.D.N.Y. Sept. 23, 2009), but Plaintiffs' general allegations about harm to their professional reputations lie far outside these circumstances, *see Kelly Kare, Ltd. v. O'Rourke*, 930 F.2d 170, 177 (2d Cir. 1991) (explaining the publicizing of stigmatizing and false information is required to prevail on a liberty-interest claim).

No court in nearly a century has recognized the amorphous and free-wheeling liberty interest to carry on economic activity free from government regulation that Plaintiffs argue is at stake in this case. The Court will not do so now.

9

## B. Deprivation

The second element of a procedural due process violation is the "deprivation of a constitutionally protected property or liberty interest." *Perez v. Metro. Transp. Auth.*, No. 11-CV-08655, 2012 WL 1943943, at *8 (S.D.N.Y May 29, 2012). Defendants threatened to shut down the Project due to Tarrant's absence. But they did not issue a stop-work order or take any other formal action to deprive Plaintiffs of the benefits of their contracts. Accordingly, even if Plaintiffs had a protected interest in their private contracts, Defendants did not deprive Plaintiffs of that interest by informing the counter-parties that the DOB intended to enforce its existing regulations and policies at the Project.

## C. Plaintiffs Received Adequate Due Process

Last, the third element of a procedural due process violation is that "the deprivation was effected without due process." *J.S.*, 714 F.3d at 105. Even if Plaintiffs had alleged a constitutionally protected interest and a deprivation of that interest, they could not satisfy this third element. To determine what process a plaintiff is due, a court applies the three factors set out in *Mathews v. Eldridge*, 424 U.S. 319 (1976). They are:

> (1) The private interest that will be affected by the official action;
>
> (2) The risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and
>
> (3) The Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335. Plaintiffs argue that they were entitled to notice and an opportunity to be heard before Defendants threatened to shut down the Project. *See, e.g.*, FAC ¶ 51. Weighing the *Mathews* factors, the Court finds that Plaintiffs received the process they were due.

First, Plaintiffs had a private interest in their contracts with the subcontractors and Midwest Steel. But the official action in this case—Defendant Schiele warning that the DOB could shut down the Project given Tarrant's absence, did not extinguish those contracts. Nor did the DOB issue a stop-work order.

Second, Plaintiffs already had adequate procedures to challenge Defendants' conduct. Namely, Plaintiffs could have promptly brought an action in state court under Article 78 to enjoin Defendants from shutting down the Project, or from enforcing a regulation that Plaintiffs' claim exceeds their lawful authority. *See Nestle Waters N. Am., Inc. v. City of New York*, 15-CV-05189 (ALC), 2016 WL 3080722, at \*9 (S.D.N.Y. May 25, 2016), *aff'd*, 689 F. App'x 87 (2d Cir. 2017) (determining that the availability of Article 78 relief was relevant to analyzing *Mathews'* second factor). Furthermore, Plaintiffs' desired procedures—notice and an opportunity to be heard—would have had little probable value. Defendant Schiele warned that the Project could be shut down because Tarrant was absent, *i.e.*, provided notice that Defendants would take official action (shutting down the worksite) unless prompt action was taken (Tarrant returned to the worksite). Even drawing all inferences in Plaintiffs' favor, it appears that Midwest Steel would have terminated the contract even if Plaintiffs had an opportunity to respond.

Third and last, providing a more extended notice and opportunity to respond would pose a significant burden on the City and potentially create safety issues. Defendant Schiele issued the warning in his capacity as an inspector for construction sites. Given that Defendant Schiele identified a violation of a DOB policy concerning safety, it was reasonable for him to promptly warn that the Project could be shut down. Plaintiffs contend that Defendants should have provided notice and an opportunity to respond before Defendant Schiele made the "threat[]."

11

FAC ¶ 32; Opp. at 11. But Defendants could not have known that Tarrant was absent from the Project's worksite until the inspection. And because the Master Rigger Letter requirement on its face addresses a safety concern,[5] it would not be reasonable to require the City to permit unsafe practices to continue while violators race to court (where injunctive relief could be had, if alleged violators meet the standards for such relief). Plaintiffs received the process they were due under *Mathews*.

As the First Amended Complaint does not plausibly allege any of the elements necessary to state a procedural due process claim, the Court will dismiss Counts One through Four of the First Amended Complaint.

## IV.    THE COMPLAINT DOES NOT SUPPORT ANY SUBSTANTIVE DUE PROCESS CLAIM

In addition to the procedural due process claims, the First Amended Complaint includes one count for violation of substantive due process (Count Eight). FAC ¶¶ 91–104. "To establish a substantive due process violation, a plaintiff must show both (1) that [it] has an interest protected by the Fourteenth Amendment, and (2) that the statute, ordinance, or regulation in question is not rationally related to a legitimate government interest." *Principle Homecare*, 158 F.4th at 333 (quoting *Winston v. City of Syracuse*, 887 F.3d 553, 566 (2d Cir. 2018). To meet the second prong, "a court need only find some reasonably conceivable state of facts that could provide a rational basis" for the governmental action. *Molinari v. Bloomberg*, 564 F.3d 587, 608 (2d Cir. 2009).

Plaintiffs contend they had a property right "to contract with Midwest Steel and alternate Master Riggers and to receive substantial revenue" and a liberty right to "use and enjoy their

---

[5] Again, the Court recognizes that Plaintiffs view this safety concern as unfounded. But that opinion is of no moment to this analysis.

right to freedom of contract with Midwest Steel and alternate Master Riggers, including freedom from unreasonable or arbitrary restraints." FAC ¶ 92. Plaintiffs argue that Defendants exceeded their lawful authority in enacting policies and practices that required Tarrant to submit a Master Rigger Letter, rejected the alternate master riggers who were not on file with the DOB for the Project, and "stat[ed] that the job could not proceed without [Tarrant's] personal presence at the job site." *Id.* ¶ 93. And this conduct was "so outrageously arbitrary and irrational," Plaintiffs allege, that it "constitute[d] a gross abuse of governmental authority" and violated Plaintiffs' substantive due process rights. *Id.*

Defendants respond that Plaintiffs had no constitutionally protected property right. *See* Mot. at 15–16. Defendants also highlight that, to state a substantive due process claim, Plaintiffs needed to allege arbitrary conduct so severe that it shocks the conscience. *Id.* at 16. A mere threat that the DOB would shut down the Project without Tarrant's presence, Defendants argue, falls short. *Id.* at 16–17. Once again, the Court agrees with Defendants.

The first prong of Plaintiffs' substantive due process claim relies on the same interests the Court already found deficient. *See supra* Pt. II(A). Accordingly, Plaintiffs have failed to show a valid property interest to make out their substantive due process claim. Nor have Plaintiffs adequately alleged Defendants acted in an arbitrary or irrational manner. Plaintiffs needed to allege conduct "so shocking, arbitrary and egregious that the Due Process Clause would not countenance it even were it accompanied by a full procedural protection." *Anthony v. City of New York*, 339 F.3d 129, 143 (2d Cir. 2003). *See also Natale v. Town of Ridgefield*, 170 F.3d 258, 263 (2d Cir. 1999) ("Substantive due process standards are violated only by conduct that is so outrageously arbitrary so as to constitute a gross abuse of governmental authority."); *Pena v. DePrisco*, 432 F.3d 98, 112 (2d Cir. 2005) (stating that a substantive due violation requires

13

allegations that "shock the contemporary conscience").  Whether Defendants acted in an arbitrary or irrational manner is a factual question that is typically better left for a jury.  But courts may address it where, as here, the answer is clear on the face of the complaint.  *See Safepath Sys. LLC v. New York City Dep't of Educ.*, 563 F. App'x 851, 856 (2d Cir. 2014) (affirming dismissal in part because plaintiffs had failed to allege arbitrary and irrational deprivation); *Nestle Waters N. Am., Inc. v. City of New York*, 689 Fed. App'x 87, 88 (2d Cir. 2017) (same).

The First Amended Complaint alleges that Defendant Schiele "threatened to shut down the Job because [Tarrant] was not personally present at the Job site."  FAC ¶¶ 7, 32.  Nothing about Defendant Schiele's conduct shocks the conscience.[6]  Nor does it somehow bespeak conduct that is "shocking, arbitrary" or "egregious."  *Anthony*, 339 F.3d at 143.  It simply represents an ordinary instance of a DOB employee enforcing an established agency policy that is well-known by the construction industry, including Plaintiffs, and was adopted by the DOB in service of its general authority to regulate safety in the construction industry in New York City, which is well within a municipality's customary police power.  *See* FAC ¶ 38.  There is also no dispute that Defendants did not issue a stop-work order.

Because Plaintiffs have not alleged an arbitrary or unreasonable deprivation of a property interest, the Court will dismiss Count Eight of the First Amended Complaint, as well.

---

[6] Defendants' enforcing the Master Rigger Letter requirement does not shock the conscience, either.  The State Court action that Plaintiffs cite, *New York Master Riggers Ass'n v. City of New York*, seems to establish that the Building Code § 3316.9 does not necessitate the Master Rigger Letter requirement.  No. 158827/2020, 2021 WL 641574 (N.Y. Sup. Ct. Feb. 17, 2021).  But it did not determine that the Master Rigger Letter requirement is unlawful or that no other legal authority supports it.

## V.    THE COMPLAINT DOES NOT SUPPORT MUNICIPAL LIABILITY CLAIMS UNDER *MONELL*

Counts Six and Seven of the First Amended Complaint allege municipal liability under *Monell v. New York City Dept. of Social Services*, 436 U.S. 658 (1978). *See* FAC ¶¶ 67–90. *Monell* liability requires a predicate constitutional harm. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986). Because Plaintiffs have failed to state a claim for violation of the Due Process Clause, the Court will dismiss the *Monell* claims.

## VI.    THE COURT DECLINES TO EXERCISE JURISDICTION OVER THE STATE LAW CLAIM

Lastly, Count Five of the First Amended Complaint alleges that Defendants violated the New York Constitution. FAC ¶¶ 64–66. Section 1367 vests the federal courts with supplemental jurisdiction over State-law claims that share a common nucleus of operative fact with federal claims. 28 U.S.C. § 1367. But when a federal court "dismisses all claims over which it had original jurisdiction, it must reassess its jurisdiction over the case by considering several related factors—judicial economy, convenience, fairness, and comity." *Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 56 (2d Cir. 2004). "In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well." *Marcus v. AT&T Corp.*, 138 F.3d 46, 57 (2d Cir. 1998). The Court has already determined it will dismiss the counts of the complaint that arise under federal law. Particularly because the State-law claim involves interpretating and applying the New York Constitution, and given no discovery has occurred, judicial economy, convenience, fairness, and comity all weigh against retaining jurisdiction over the State-law claim. Therefore, the Court will not exercise supplemental jurisdiction over the State-law claim and dismisses it without prejudice for refiling in State court.

15

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss (Dkt. No. 36) is GRANTED.

The Clerk of Court is respectfully directed to enter judgment in favor of Defendants and CLOSE

this case.

Dated: March 30, 2026
       New York, New York

SO ORDERED.

_____
MARGARET M. GARNETT
United States District Judge

16